Frank T. Hamlin v. Commissioner.
Hamlin v. Commissioner
Docket No. 17359.
United States Tax Court
1950 Tax Ct. Memo LEXIS 53; 9 T.C.M. (CCH) 991; T.C.M. (RIA) 50263; November 3, 1950
*53 J. Alex Neely, Jr., Esq., Anderson, S.C., for the petitioner. William W. Oliver, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves income tax for the years 1944, 1945 and 1946. Deficiencies were determined as follows: For 1944 $23.33, for 1945 $216.64, and for 1946 $31.17. The Commissioner alleges that the deficiencies so determined should be increased to the following amounts: For 1944 $46.53 and for 1945 $582.08. No increase is sought as to 1946. Aside from the question of such increase of deficiencies for 1944 and 1945 the only question presented is: What is the proper basis for depreciation upon certain real estate owned by the petitioner? From admitted allegations in the pleadings, evidence adduced and stipulations of agreement entered into at the time of trial we make the following Findings of Fact The father and mother of petitioner died when he and his brothers and sisters, younger than he, were very young and they were all raised by their aunt, Lucy Thompson, who stood in position of mother to them. He went to work, and gave his aunt money for the education of his younger brothers and sisters. *54 She gave him notes for the money he advanced. It was her idea so to do. Lucy Thompson died November 20, 1926, leaving a will executed in 1911 with a codicil executed in 1919. About January 1927 the will and codicil were duly admitted to probate by the judge of probate of Anderson County, South Carolina, and the petitioner, one of the executors named in the will, qualified as executor. He had a one-tenth interest in the estate. Claims filed against the estate included claims by heirs as follows: By petitioner for $13,359.38 with interest at 6 per cent from June 1, 1918 (principal and interest amounting to $24,793.31) arising from the notes given to the petitioner by his aunt because of his advancements for education of the children; by J. C. Earle $6,778.52 with 8 per cent interest from May 1, 1924; and by Mrs. Carrie McAlister $374.22. There was dispute as to the above claims. J. C. Earle and three other heirs (Mrs. Lucy E. McCurry, Frank T. Arnold and Mrs. J. Frances Earle) filed a proceeding against the petitioner in the probate court alleging in pertinent part that he was a nonresident of the county and had filed no bond, that the decedent's will and codicil had provided for sale *55 of her property except some household effects, payment of debts and payment of a legacy of $2,000 to John C. Hamlin, petitioner's brother, for a college education; that being a resident of Canal Zone, Panama, petitioner was not in a position to give the proper attention to administration of the estate; that he was making no effort and intended to make no effort to collect a debt of $2,700 due the estate from John C. Hamlin or to take the position that the legacy to John C. Hamlin had been adeemed; that the petitioner had filed his claim for $13,359.38 and interest from June 1, 1918, but that the decedent did not owe petitioner any such sum and the claim was unjust, fraudulent and invalid and the note procured through undue influence, overreaching coercion and fraud and would be opposed by the petitioning heirs and should not be paid; that there was conflict between the interests of the petitioning heirs and the petitioner's interest and conflict between petitioner's personal interest and official duty and that he was disqualified to act as executor; and that he should be removed as executor and some suitable person appointed; and that they have such other and further relief as might *56 properly be granted. After response filed by petitioner a hearing was had in the probate court on the complaint, and a decree was entered, in effect that the court found no breach of executor duty and no fraud, coercion or undue influence in procuring the note of $13,359.38, that the contention by some of the legatees that the note is unjust and should not be paid was not sufficient cause for removal of the petitioner as executor, that evidence failed to convince the court that the executor should be removed, but that the court was satisfied that he had been faithful in the discharge of his duties, and that the petition was dismissed. The petitioning heirs filed an appeal and gave notice, dated October 12, 1928, of intention to appeal to the circuit court. On December 20, 1928, the petitioning heirs executed an instrument in writing providing in pertinent part as follows: That in consideration of $400 each, paid to Mrs. Lucy E. McCurry, Frank T. Arnold and Mrs. J. Frances Earle, and petitioner's promissory note of $9,742.64 to J. C. Earle, they "* * * have granted, bargained, sold and released and by these presents do grant, bargain, sell and release unto the said Frank T. Hamlin, *57 his heirs and assigns forever: all our right, title and interest as heirs at law and distributees of the estate of Miss Lucy A. Thompson, deceased, or as legatees and devisees under the will of the said Miss Lucy A. Thompson, deceased ina[in] and to all and singular the entire estate, both real and personal, of the said Miss Lucy A. Thompson, deceased, except the articles of personal property specifically devised and already divided or delivered; and also all our right, title and interest as heirs at law, distributees, legatees and devisees in the proceeds of any and all of said estate that may have heretofore been sold or may hereafter be sold by the executor of the will of the said Miss Lucy A. Thompson, deceased; and also all claims, demands, actions and rights of action that we, or any of us, may have against the estate of Miss Lucy A. Thhompson[Thompson], deceased, including a promissory note from the said Miss Lucy A. Thompson to J. Clarence Earle, dated May 1, 1924, whereby she promised to pay to the said J. Clarence Earle, or order, the sum of Six Thousand, Seven Hundred, Seventy-eight and 52/100 ($6778.52) Dollars, one year after date of said note, with interest and Attorney's *58 fees as provided for therein; and all claims, demands, actions and rights of action of the above named parties, or any of them, against the said Frank T. Hamlin, individually or as Executor, as aforesaid, are hereby withdrawn, settled and ended." The amounts which petitioner agreed to pay the other heirs were arrived at by agreeing on the value of the property, with a give or take proposition as to who would take money, or who would take property, either he to pay their claims and take the property or they to pay his claim and take the property. He understood they were unable to raise the money. The instrument of December 20, 1928, was the result of these negotiations. By the instrument of December 20, 1928, the petitioner became the owner of an additional four-tenths interest in the estate and became the owner of the claim of J. C. Earle. On January 8, 1927, the judge of the probate court issued authority to certain named parties empowering them to make a true inventory and appraisement of the assets of the estate of Lucy A. Thompson, and return thereof before February 8, 1927. The real estate was appraised as follows: 1 lot on West Franklin St.
$ 6,000.00
3 buildings on above lot
6,000.00
1 lot on Square
20,000.00
Room on above lot
10,000.00
*59 Appraisement was certified to on January 15, 1927, and on January 18, 1927, the petitioner as executor executed the oath attached to the appraisement stating, inter alia, that "the annexed inventory is in all respects just and true." The "warrant of appraisement, inventory and return of appraisers" was filed with the probate judge on January 18, 1927. On January 7, 1929, the petitioner as executor of the estate of Lucy A. Thompson executed a deed to Janie Hamlin, his sister, covering a part of the real estate involved in the estate, in substance a brick storeroom, and the lot upon which it was situated; also a deed to Janie Hamlin covering another portion of the real estate in the estate, in effect a 2-acre tract of land, and the improvements. Petitioner's sister, Janie, was acting for him in taking title to the property. The real estate described in both deeds was in the city of Anderson, Anderson County, South Carolina. Each deed recites the power of the executor, under the terms of the will, to sell the real estate at public auction after due advertisement, and recites the due and legal advertisement of the sale, and the offer of the property at public auction to the highest bidder *60 on January 7, 1929; also recites that Janie Hamlin was the highest and best bidder and, therefore that in consideration of the sum of $23,000 (for the brick storeroom and lot) and of $8,600 (for the 2-acre tract) the petitioner as executor conveys the property to Janie Hamlin. Both deeds were filed for record on January 9, 1929. The property had been advertised and sold at auction in accordance with the instructions of the will on advice of counsel and was sold to fix the value. There were several bidders at the sale and immediately after the sale a party offered $7,000 more for the storeroom property. On January 9, 1929, there were also filed for record two deeds from Janie Hamlin to Frank T. Hamlin, the petitioner, one for each of the tracts of land above described. The deeds from Janie Hamlin recite, respectively, consideration of $23,000 and $8,600 and each "granted, bargained, sold and released" the property to Frank T. Hamlin, his heirs or assigns, with warranty of title. To settle the obligations under his contract, petitioner borrowed $12,500 with a cost of the loan at $65. The first annual return filed by petitioner as executor, about January 7, 1928, showed receipts of *61 $3,189.90 with disbursements of $2,950.48 with $239.42 balance on hand. It also showed the following: "The right to commissions reserved till later." About July 24, 1929, the petitioner as executor filed his second annual and final return. Among total receipts of $34,221.46 he listed the following: Sale of Storeroom and Lot
$23,000.00
Sale of Residential property
8,600.00 Among disbursements he lists "Note of Lucy A. Thompson to Frank T. Hamlin 24793.31" and "Note of Lucy A. Thompson to J. C. Earle, Assigned to Frank T. Hamlin 9742.64." Also among disbursements is found "No Executor's fees Charged 000.00." Total disbursements were $37,548.52 and there is noted "Debts in Excess of Receipts $3,327.06" with the following explanation: "The Executor has remitted his note against the Estate, which was $24,793.31, the sum of $3305.59, and he has also paid out of his own funds as Court costs in fees the sum of $21.47 and in addition to this he has not charged any fees and commissions as Executor. "None of the legatees received anything as the debts were more than the assets." The two returns filed by the petitioner as executor taken together show a total amount received *62 (including $31,600 as the bid price of the real estate) of $33,982.04 and a total amount of $40,499 paid out. The parties stipulate that the rate of depreciation is 2 per cent per year on the brick building and 3 per cent on the frame buildings; also that depreciation has been allowed to the petitioner as follows: On the brick
On the frame
building
buildings
1937
$771.43
1941
771.43 $450
1942
771.43
300
1943
771.43
300 No depreciation has been claimed or allowed as to other years. In the computation of deficiencies for each of the taxable years depreciation was allowed on the brick building in the amount of $82.69, and on the residential buildings in the amount of $52.84. In the computation of the deficiencies for the taxable years 1944 and 1945 the amount which had been withheld from wages was deducted, as follows: For the year 1944 in the amount of $23.20 resulting in an erroneous statement of $23.33 as deficiency instead of the correct amount of $46.53; and for the year 1945 $365.44 as an amount withheld from wages was deducted resulting in the statement of the erroneous amount of $216.64 as the deficiency instead of $582.08. The petitioner *63 filed his income tax returns for the taxable years with the collector for the district of South Carolina. Opinion The primary question here is as to the petitioner's basis for depreciation, that is to say, his cost of certain real estate. Although the property was sold at executor's sale to him, through his sister as his agent, for $31,600, the petitioner on brief finally contends for a basis of $38,680.25. This figure he arrives at as follows: $24,793.31, being the amount of his claim against the estate plus $12,565, being the cost of $12,500 borrowed by him in connection with an agreement made by opposing heirs and the purchase of their claims, plus $1,321.94, his computations of executor's commissions owing to him but not paid. We have examined this somewhat confusing record carefully to ascertain, if possible, the proper basis for the property but we are unable to agree with petitioner's contentions that the amounts above itemized constitute his base. In the first place, though in connection with a settlement between himself and other heirs, he borrowed $12,500 at an expense of $65, there is no evidence that this money was all used in paying claims against the estate - and *64 his claims against the estate are in effect the basis for which he contends. Likewise, we are not convinced by the contention that executor's fees in the sum of $1,321.94 should be included in the basis of the property. In his second annual and final return as executor he made the statement "No Executor's fees Charged." Moreover, neither the written settlement with the four heirs who petitioned for his removal nor his testimony that there was oral agreement with them of a give and take proposition, that either he would pay their claims and take over the property or they would pay his claim and take over the property, establishes the right in him to include his executor's commissions in his basis. In the absence of substantiation of the two items of $12,565 and $1,321.94, as a part of the alleged basis of $38,680.25, it is obvious that the petitioner has not established any basis above the $31,600 purchase price at the sale. We do not, however, rest our conclusions solely on the failure of proof in that respect. Thirty-one thousand six hundred dollars ($31,600) was the price at which the property passed to his sister and the price at which it passed from her (though only nominally in *65 her name) to him. As executor he reported the receipt of $31,600 from the sale. He testified: "I got the property instead of that amount of money"; also that he "sold the real estate to fix the value." Petitioner actually purchased the property for $31,600. We find no sufficient reason in the other facts to consider that this purchase price was any greater than that amount. In substance, petitioner's idea appears to be that because, having a claim of his own and having acquired other claims for application against the purchase price of the real estate, his basis should be the amount of the claims purchased; but he did not purchase the rights of all of the heirs, in fact purchased only four-tenths interest which with his own one-tenth interest made him the owner of one-half. The interest of the other heirs was wiped out by the sale. Therefore, it is clear that though having claims against the estate he paid in no money on the sale, he actually utilized only $31,600 in claims in order to acquire title. Certainly his acquisition of the other one-half interest in the property owned by the non-contesting heirs was not because he had purchased claims from them or any one else but because *66 in accordance with the will the property was sold and he purchased it for $31,600. If he had not purchased, someone else might have acquired the property for that figure since the evidence is that there were other bidders. The fact that someone else immediately offered $7,000 more is, of course, immaterial. It is not a question as to what he might have paid or what the property was actually worth but what he in fact paid. Another consideration leads to the same conclusion: Insofar as petitioner's position rests upon the agreement, either oral or written, with the heirs who sought to oust him as executor, to buy their claims and interests, it is apparent from the record before us that this was by way of compromise and settlement of the whole matter of his executorship, their attack or proposed attack upon his claim against the estate, and his alleged preference of his brother, and that "all claims, demands, actions and rights of action" of the contesting heirs against the petitioner "individually or as executor" were "hereby withdrawn, settled and ended." The amount expended in the compromise and settlement of such broad claims can not logically be ascribed solely to the purchase *67 price of property which through executor's sale he later acquires for a stated consideration, without the necessity, because of the use of claims, of putting up cash; and there are before us no facts upon which the settlement could be allocated as between the more general claims of the petitioning heirs, and the purchase of the real estate at executor's sale. We conclude and hold that petitioner has not shown that his basis for depreciation purposes in the property was greater than $31,600. The parties also disagree as to the allocation of purchase price between the two properties, the lot with brick storeroom and the 2-acre tract with frame improvements. The respondent allocated one-third or $7,666.67 of the total price for the storeroom building and lot to the building itself and allocated one-half or $4,300 of the total cost of the 2-acre tract with residences, to the residences. This was in the same proportion as the allocation between buildings and land made by the appraisers in 1927. The petitioner contends that that appraisal was not correct, but we place more reliance in the disinterested and sworn appraisal made at the time, more than 20 years ago, than in petitioner's interested *68 views in this matter. He at that time as executor swore that the inventory "is in all respects just and true." The appraisal in the estate is, of course, not binding here but it is none the less evidential. The petitioner ascribes roughly two-thirds of the business property value to buildings which is directly contrary to the appraisement, and on brief roughly one-third of the cost of the residence property to the lot itself, but no reason for this allocation is advanced except his own opinion that the values were such. There was no other evidence of values. Under all of the facts we find no reason to alter the allocations made by the respondent. The parties are in agreement upon the rates of depreciation. This fact in the light of the above conclusions appears to dispose of the question of basis and depreciation. There remains for consideration the respondent's application expressed in amended answer to increase the deficiencies for the years 1944 and 1945. This does not apply to 1946. It appears upon the face of the deficiency notices attached to the petition that for 1944 and 1945 the amounts stated as deficiencies were incorrect in that after computing the correct tax liability, *69 the amount withheld from wages was incorrectly subtracted and the difference called the deficiency, that is, that for 1944 from the tax liability of $46.53, $23.20 withheld from wages is deducted to arrive at a deficiency of $23.33 and for the year 1945 after computation of correct tax liability of $582.08 the amount of $365.44 withheld from wages is deducted to arrive at $216.64 which is referred to as the deficiency. This is obvious error since amounts withheld from wages are not determinative of the correct amount of deficiency. The additions to deficiencies are allowed, that is, the deficiency for 1944 is $46.53 and for 1945 $582.08. For 1946 the amount is $31.17. Decision will be entered for the respondent.